525 So.2d 329 (1988)
STATE of Louisiana
v.
Charles Ray SPEARS.
No. 87 KA 1008.
Court of Appeal of Louisiana, First Circuit.
April 19, 1988.
Rehearing Denied June 6, 1988.
*330 Charles Genco, Asst. Dist. Atty., Amite, for plaintiff-appellee.
Robert C. Williams, Baton Rouge, for defendant-appellant.
Before SHORTESS, LANIER and CRAIN, JJ.
SHORTESS, Judge.
Charles Ray Spears (defendant) was indicted by the Tangipahoa Parish Grand Jury and charged in a single indictment of (1) (count one) the armed robbery of Roy E. Walters, Jr. LSA-R.S. 14:64; (2) (count two) the armed robbery of John E. Reed,[1] LSA-R.S. 14:64; (3) (count three) the attempted murder of Roy E. Walters, Jr., LSA-R.S. 14:27 and 14:30;[2] (4) (count four) the second degree murder of John E. Reed, LSA-R.S. 14:30.1. Defendant pled not guilty to the charges. He was found guilt of all the charges and sentenced for the convictions. On appeal, defendant's convictions and sentences were affirmed. See State v. Spears, 350 So.2d 603 (La.1977).
Habeas corpus relief was granted in the U.S. District Court for the Eastern District of Louisiana on July 1, 1986, and defendant was re-tried on September 15-17, 1986.[3] At defendant's second trial, a unanimous jury found him guilty on all four counts charged in the indictment. Subsequently, the trial court imposed sentences of imprisonment at hard labor for ninety-nine years, without benefit of parole, probation or suspension of sentence on counts one and two. On count three, defendant was sentenced to imprisonment at hard labor for a term of twenty years "with eligibility for parole in ten years"; and, on count four, defendant received a sentence of imprisonment at hard labor for life subject to the proviso that defendant would be "eligible for parole after service of twenty years." The court ordered that the sentences on counts one and three run concurrently with each other and consecutively with the sentences on counts two and four, and the sentences on counts two and four were made to run concurrently with each other. Defendant has appealed, urging eight assignments of error. Assignments four, five and seven were not briefed on appeal and are, therefore, considered abandoned. Uniform Rules Courts of Appeal, Rule 2-12.4.[4]
*331 FACTS
These offenses occurred on August 8, 1975, at the Goodyear Service Store on South Cate Avenue in Hammond, Louisiana. At approximately 5:30 or 6:00 p.m., all the store's employees except John Reid (the store manager) and Roy Edward Walters (office manager) left work for the day. While Walters worked at his desk, defendant walked into the store and purchased a radio from Reid. Defendant then asked to see some cassette recorders. Reid called Walters for assistance in showing the recorders. Walters walked to where Reid and defendant were standing, and defendant pulled a gun from his pocket and said: "[H]old it, just don't move." Defendant then pulled out a pair of handcuffs and told Reid to put one cuff on his right wrist and Walters to put the other on his left wrist. They complied. Defendant led the two men back to the office area where he made them lie down on their stomachs. The safe was not locked. Defendant rummaged through the safe and found a bank bag containing money. Then defendant went to the front counter where two cash drawers were located, removed money from each of the drawers, and put it inside the bank bag he had taken from the safe.
Defendant then said: "[L]et me see your I.D.'s so if you try to identify me, I will know who you are and I can get you." Reid replied: "[Y]ou don't have to worry about that, we don't know who you are." Reid and Walters removed their wallets from their pockets. Walters opened his wallet which contained only one dollar. Defendant did not take Walters' wallet, but he took Reid's which contained about twenty or thirty dollars. Defendant removed the money from Reid's wallet and threw the wallet at a trash can, knocking it over. Defendant did not look at the identifications of either man. Within seconds, Walters heard "bam, bam." Both men had been shot in the head. Walters lost his vision the moment he was shot. Walters could not move and surmised that he was semi-conscious. After Walters could once again move, he reached for the telephone which was on a desk behind him. When he could not reach the telephone, he pulled himself and Reid close enough to enable him to use the telephone and report the occurrence of the crimes.
Reid died as a result of the gunshot wound to his head. Following surgery, Walters gradually regained most of his sight; however, he now has a permanent blind spot in the right, lower field of his vision.
At a photographic lineup held on or about March 1, 1976, Walters selected defendant as the perpetrator of these offenses. Thereafter, on March 25, 1976, a physical lineup was conducted at the Hammond jail and Walters positively identified defendant as the individual who committed the offenses. Again at trial, Walters made a positive in-court identification of defendant as the perpetrator.
Several alibi witnesses testified for defendant. Samuel L. Spears, defendant's uncle, testified that, on August 5, 1975, he drove from New Orleans to his residence in Chicago, Illinois, and that defendant rode with him; that on August 7, he took defendant to James Beavers and secured employment for him; that defendant went to work on August 8; and that defendant stayed in Chicago with him until the following January. James Beavers testified that he employed defendant during August of 1975; that defendant started working on the day his wife Doris Beavers went on vacation; and that he had seen defendant in Chicago a "few days before," although he did not recall the exact date. Doris Beavers testified that defendant worked at the Beavers' place of business in Chicago, that she saw him at the business on August 8, 1975, before 12:00 a.m., that she saw him there again after 4:00 p.m. or 4:30 on August 8, and that on the following day she went on vacation.
ASSIGNMENTS OF ERROR NOS. ONE, TWO, AND THREE
Defendant contends that the trial court erred by allowing the prosecutor to improperly use peremptory challenges to exclude persons of his race from serving on the petit jury, i.e., potential black jurors Kathy Kees Robertson, Vildra Ann Holliday *332 and Lois A. Newton. More specifically, he argues that the exclusion of Robertson, Holliday and Newton was contrary to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), thus denying him equal protection of the law.
In Batson, the U.S. Supreme Court held that the Equal Protection Clause forbids the state from using its peremptory challenges to strike potential jurors of the defendant's race solely on account of their race or on the assumption that jurors of the defendant's race will be unable to impartially consider the state's case against the defendant.
In raising a Batson claim, the defendant must show that: (1) he is a member of a cognizable racial group, (2) the prosecutor has exercised peremptory challenges toward the elimination of venire members of his race, and (3) the facts and circumstances infer that the prosecutor used his peremptory challenges for the purpose of striking minorities. A defendant makes a prima facie showing of discrimination by showing the above three factors and thereby compels the state to come forward with a neutral explanation for challenging black jurors. Batson, 106 S.Ct. at 1723.
We note that jury selection originally began when a jury venire was brought into the courtroom. The record does not reflect how many were in the venire nor its racial composition. The racial composition of the jury which was selected to hear the case is also not known from the record.
The record does reflect, however, that during voir dire examination, Ms. Robertson was told by the prosecutor that the state did not have any fingerprint evidence in this case. Thereupon, the prosecutor asked her if she would vote not guilty just because of that fact. Robertson replied in the negative. Thereafter, the prosecutor continued questioning Robertson, which ultimately required the court to admonish the prosecutor to stop asking ridiculous questions which it finally characterized as not being fair.
When the trial court denied the prosecutor's use of a challenge for cause as to Robertson, the prosecutor utilized a peremptory challenge to exclude her from serving on the jury and stated that he was doing so because Robertson had stated that the state's inability to produce fingerprint evidence would cause her to vote not guilty. Defense counsel countered that under Batson the state's use of a peremptory challenge was improper.[5] In response, the prosecutor stated that his peremptory challenge was not based on Robertson's race but on her statements that she would vote not guilty in the absence of fingerprint evidence. The trial court ruled that it would allow the state to peremptorily challenge Robertson, and defense counsel objected to the ruling.
Voir dire examination continued, and the prosecutor was allowed by the trial court to peremptorily challenge Vildra Ann Holliday and Lois A. Newton, notwithstanding defense counsel's objections that those prospective jurors were excluded contrary to Batson. In articulating his reasons for peremptorily challenging Ms. Holliday and Ms. Newton, the prosecutor stated that Holliday was not completely truthful when he asked her if she had ever been arrested, convicted or charged with any criminal offense. He noted that during subsequent questioning Holliday admitted she had been charged with theft and placed in a pre-trial diversionary program. In regard to Newton, the prosecutor stated that she had expressed a reluctance to convict defendant if she were convinced of defendant's guilt by only one witness and on that basis he felt it was in the state's best interest to peremptorily challenge her.
The record in the instant case does not reflect that the trial court found that defendant established a prima facie case of purposeful discrimination to trigger neutral explanations by the state under Batson v. *333 Kentucky. Therein, the Supreme Court specifically said:
In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.
Batson, 106 S.Ct. at 1723. None of the circumstances present in the illustrative examples given above are present under the facts of this case. We find no "pattern" of strikes against blacks giving rise to an inference of discrimination. After careful review of the entire voir dire proceedings, we find that these three black prospective jurors peremptorily challenged by the state were challenged on the basis of clearly justifiable reasons and/or less quantifiable but no less justifiable, stated bases reflecting prosecutorial assumptions stemming from factors unrelated to race. Hence, defendant failed to establish that there was purposeful discrimination in this case. See State v. Collier, 522 So.2d 584 (La.App. 1st Cir.1988).
These assignments of error lack merit.
ASSIGNMENT OF ERROR NO. SIX
Defendant contends that the trial court erred in allowing the introduction of photographs of the victim into evidence. Defendant argues that the prejudicial effect of the photographs outweighed their probative value; that the prosecutor did not show any necessary purpose for introduction of the photographs; and that the identity of the decedent, the fact that an autopsy had been performed, the fact that there was a corpus delicti, the cause of death, and the entry wound to the decedent had already been resolved before the photographs were introduced into evidence.
Photographs which illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place or thing depicted are generally admissible. State v. Kirkpatrick, 443 So.2d 546 (La.1983), cert. denied, 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 847 (1984). Postmortem photographs of murder victims are admissible to prove corpus delicti, to corroborate other evidence establishing the cause of death, and to provide positive identification of the victim. State v. Bennett, 454 So.2d 1165 (La.App. 1st Cir.), writ denied, 460 So.2d 604 (La.1984). The admission of allegedly gruesome photographs will be overturned on appeal only if the prejudicial effect of the photographs clearly outweighs their probative value. State v. Perry, 502 So.2d 543 (La.1986), cert. denied, ___ U.S. ___, 108 S.Ct. 205, 98 L.Ed.2d 156 (1987).
After examining the contested black and white photographs, we find that their probative value outweighs any prejudicial effect. Consistent with the stated purposes given at trial by the prosecutor for their introduction, the photographs were admissible to prove corpus delicti, to corroborate other evidence establishing the cause of death, and to provide positive identification of the victim. Furthermore, none of the photographs are so gruesome as to "overwhelm reason" to associate defendant with the atrocity without sufficient evidence. State v. Watson, 449 So.2d 1321 (La.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985). Accordingly, these photographs were admissible.
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. EIGHT
Defendant contends that the trial court erred by denying his motion for a mistrial after the prosecutor commented during closing argument rebuttal on defendant's failure to introduce certain evidence. He argues that the prosecutor was allowed to illegally and impermissibly shift the burden of proof from the state to him.
*334 During defense counsel's closing argument, he emphasized the substance of defendant's alibi defense, i.e., that he was in Chicago, Illinois, at the time of the instant offenses. Thereafter, during rebuttal closing argument, the prosecutor stated in pertinent part as follows:
We've got the defense's witnesses. I want to see the employment records. If this man was up there, bring them down from Chicago, Illinois; and then if they show us by the employment records and cancelled checks made out to Bob Spears, then these charges will be dismissed and the defendant will be set loose because then we will be led to believe that he is not up there or that we had the wrong man.
(Footnote deleted.)
Defense counsel promptly moved for a mistrial arguing that said comments constituted improper closing argument, ascribing a burden to the defense to produce the employment records and cancelled checks. The trial court denied defense counsel's motion, and the prosecutor continued his argument.
Citing State v. Simms, 381 So.2d 472 (La.1980), defendant argues that the prosecutor's comments "improperly invoked" the presumption contained in LSA-R.S. 15:432. LSA-R.S. 15:432 provides in pertinent part as follows:
A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may none the less be destroyed by rebutting evidence; such is the presumption ... that evidence under the control of a party and not produced by him was not produced because it would not have aided him....
In Simms, the prosecutor commented during rebuttal argument that "if you have evidence under your control, and you don't use it, the presumption of the law is, the reason you don't use it, is because it wouldn't have helped you." 381 So.2d at 476. Although the Simms court found that the comments improperly referred to the presumption in LSA-R.S. 15:432, quoted above, the court found that it was unable to see how defendant was prejudiced by the prosecutor's reference to the presumption, in view of the prosecutor's right to argue the lack of evidence and to respond to defendant's closing argument during the state's rebuttal argument.
Herein, unlike in Simms, the prosecutor's comments did not constitute a reference to the presumption in LSA-R.S. 15:432. Here the comments were proper and related to the lack of evidence in answering defense counsel's closing argument. LSA-C.Cr.P. art. 774. See State v. Smith, 433 So.2d 688 (La.1983); State v. Landry, 388 So.2d 699 (La.1980), cert. denied, 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed. 2d 618 (1981); State v. Robinson, 480 So.2d 329 (La.App. 3d Cir.1985), writ denied, 498 So.2d 13 (La.1986). In fact, immediately after the trial court denied defense counsel's motion, the prosecutor continued his rebuttal as follows:
MR. GENCO: The point is that the alibi defense is flimsy, flimsy. It is flimsy. The burden of proof is on the State completely, completely on the State. And, ladies and gentlemen, Roy Walters has carried that burden.
Contrary to defendant's assertions, the prosecutor's comments did not suggest that defendant had the burden of proving his innocence or that the state did not have to prove all the elements of the charged offenses beyond a reasonable doubt. See State v. Stovall, 439 So.2d 618 (La.App. 1st Cir.1983). Furthermore, the comments did not deprive defendant of his presumption of innocence. See State v. Robinson, 480 So.2d 329. This assignment lacks merit.
For the reasons stated, defendant's convictions and his sentences are affirmed.
AFFIRMED.
NOTES
[1] Throughout the transcript, the name is spelled "Reid," and we will adopt that spelling.
[2] The record shows that on the first day of defendant's second trial and before trial began, the prosecutor amended the indictment in regard to count three. The amended indictment changed the statutory reference contained in count three from LSA-R.S. 14:30 to LSA-R.S. 14:30.1 to reflect that defendant was charged with attempted second degree murder. Rearraignment was not necessary because the indictment did not alter the nature of the crime charged. State v. Davis, 385 So.2d 193 (La. 1980).
[3] The order of the U.S. District Court for the Eastern District of Louisiana granting habeas corpus relief ordered that the state re-try defendant on the instant charges within one hundred twenty days or release him from custody.
[4] Defendant briefed two additional arguments not formally assigned as errors: (1) (assignment number nine in brief) asserting that the evidence was insufficient to support his convictions and (2) another argument (not referred to in brief by an assignment of error number) claiming that the trial court failed to charge the jury that the state was required to prove beyond a reasonable doubt that he was the person who committed the charged offenses. However, in accord with the well-established jurisprudence of the Louisiana Supreme Court under the provisions of LSA-C.Cr.P. arts. 844 and 920, this court will not consider any argument which is neither assigned as error nor related to error patent on the face of the record. See State v. Overton, 337 So.2d 1201 (La.1976); State v. Williams, 319 So.2d 404 (La. 1975). Coir examination of the appellate record fails to disclose any errors patent in regard to either of the above arguments.
[5] We note that in brief defendant alludes to defense counsel's assertion during arguments before the trial court that once Robertson was questioned in the "proper form" she stated that "she could follow the Court's instructions." However, the appellate record does not support defense counsel's assertion.