618 So.2d 1098 (1993)
STATE of Louisiana
v.
Jacqueline CARR.
No. 90 KA 1410.
Court of Appeal of Louisiana, First Circuit.
April 23, 1993.
Rehearing Denied June 16, 1993.
*1099 William R. Campbell Jr., New Orleans, for State.
Patrick J. Berrigan, Asst. Dist. Atty., Covington, for appellee.
Jacqueline Carr, Slidell, for appellant.
Before CARTER, LeBLANC and PITCHER, JJ.
LeBLANC, Judge.
Defendant, Jacqueline Carr, was charged by bill of information with eight counts of theft of $500.00 or more, in violation of La.R.S. 14:67. She pled not guilty. After trial by jury, defendant was found guilty as charged on six counts. On the remaining two counts, defendant was found guilty of the responsive offense of unauthorized use of a movable valued in excess of $1000.00, a violation of La.R.S. 14:68. For each of the six theft convictions, defendant received a sentence of six years at hard labor and a fine of $3000.00 and court costs. For the two unauthorized use of a movable convictions, defendant received a sentence of two years at hard labor and a fine of $3000.00 and court costs. The trial court ordered that the jail sentences were to run concurrently and all fines and court costs were to run consecutively. Defendant has appealed in proper person; her brief contains six arguments,[1] as follows:
1. Defendant received ineffective assistance of counsel at trial.
2. The trial court erred in proceeding with the criminal prosecution without ruling on defendant's motion to recuse the judges of the 22nd Judicial District Court.
3. The trial court erred in proceeding with the criminal prosecution without determining defendant's mental capacity to stand trial and assist counsel in her defense.
4. Error occurred when the call of the central jury pool took place before a recused judge and the petit jury venire was called out of the presence of defendant and her counsel.
5. The trial court erred in disqualifying a prospective juror, Gerald Rouleau, in a discriminatory manner.
6. Prosecutorial misconduct in tampering with the petit jury venire resulted in the *1100 trial court's discharge of eighteen prospective jurors.

FACTS
James Moses, a St. Tammany Parish resident, died in 1977. Shortly thereafter, the decedent's brother, Joseph Moses, who lived in Ohio, retained defendant, a Slidell attorney, to handle the decedent's succession and represent his four minor children. Joseph Moses was appointed administrator of the decedent's estate and tutor of the four minor children. Through the following years, defendant handled numerous legal matters connected with this succession and tutorship. However, between April 6 and June 12, 1984, defendant, without authorization, removed from the succession and/or tutorship accounts a total of $97,000 by writing eight separate checks and depositing them into her personal accounts.
At the trial, the evidence established that defendant had invested heavily in two campgrounds, apparently believing that she would realize a substantial profit because of the expected increase in tourism associated with the 1984 World's Fair in New Orleans. Defendant documented these checks as "loans" which she intended to repay with interest. However, when the World's Fair did not bring the great numbers of tourists expected, defendant apparently experienced financial difficulties and was unable to fully repay the "loans". When Joseph Moses learned that defendant had removed these funds without authorization, he demanded immediate repayment and an accounting. Subsequent delays by defendant led Joseph Moses and one of the decedent's children to file various complaints with the Louisiana State Bar Association, a local judge, and local law enforcement officers, eventually resulting in the instant criminal charges.

ARGUMENT NO. ONE:
In this argument, defendant contends that she was prejudiced at the trial by the ineffective assistance of counsel. However, we note that this argument does not relate to an original or supplemental assignment of error. In accord with the well-established jurisprudence of the Louisiana Supreme Court, this Court will not consider arguments which are neither assigned as error nor related to errors patent on the face of the record. State v. Williams, 319 So.2d 404 (La.1975); State v. Spears, 525 So.2d 329, 330 n. 4 (La.App. 1st Cir.), writ denied, 532 So.2d 175 (1988). Moreover, for the reasons which follow, we find this argument could not be considered on appeal even if properly raised by an assignment of error.
A claim of ineffective assistance of counsel is more properly raised by an application for post-conviction relief in the district court where a full evidentiary hearing may be conducted. However, where the record discloses sufficient evidence to decide the issue of ineffective assistance of counsel when raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Teeter, 504 So.2d 1036, 1039-1040 (La.App. 1st Cir. 1987).
In her brief to this Court, defendant cites Wiley v. Sowders, 647 F.2d 642 (6th Cir.), cert. denied, 454 U.S. 1091, 102 S.Ct. 656, 70 L.Ed.2d 630 (1981), for the proposition that defense counsel's admission of guilt in his opening statement "constituted a surrender of the sword." Defendant further states:
In both opening statement and closing argument, [trial counsel] denied Jacqueline Carr the effective assistance of counsel by pleading her guilty, without her knowledge and consent to a felony, unauthorized use of movables in excess of $1,000.00, a responsive verdict. Then, [trial counsel] presented no witnesses on behalf of Jacqueline Carr; no experts; (sic) no evidence of claim of right ... The admission by [trial counsel], without the authority and consent of Jacqueline Carr that the heirs never received their money because Jacqueline Carr was bankrupt; (sic) destroyed Jacqueline Carr's theory of innocence of claim of right, inherent in her "not guilty" plea. The ineffectiveness can be viewed in the jury verdict due to the fact that the jury returned "unauthroized (sic) use" verdicts *1101 on the monies which [trial counsel] admitted were repaid; and theft on monies which [trial counsel] admitted remained unpaid, due to bankruptcy.
Initially, we note that trial counsel's conduct in the instant case is clearly distinguishable from that of defense counsel in Wiley. That trial took place in Kentucky, where the jury not only determines guilt or innocence but also fixes the penalty. See, Wiley v. Sowders, 647 F.2d at 644, n. 4. Therein, defense counsel repeatedly informed the jury that his client was guilty and pleaded for mercy. In Wiley, the court found that defense counsel's "trial tactic" of admitting defendant's guilt constituted ineffective assistance of counsel because counsel did not first obtain his client's consent to such a "strategy".
In the instant case, contrary to defendant's argument, trial counsel never stated that defendant was guilty of the charged offenses or of any responsive offenses. Trial counsel did admit that defendant had taken the money for her own personal use and without any authorization to do so. However, while admitting that such acts arguably constituted unethical conduct by an attorney and might have rendered the defendant civilly liable, trial counsel steadfastly maintained that such acts were not criminal. Trial counsel repeatedly referred to the fact that defendant considered the money taken to be loans which would be repaid with interest, thereby indicating a lack of any intent to permanently deprive.
In our view, the evidence against defendant was substantial, if not overwhelming. Therefore, under such circumstances, trial counsel's strategy outlined above might well have been reasonable. In any event, the above allegations of ineffective assistance of counsel raised in defendant's brief cannot be sufficiently investigated from an inspection of the record alone. In her brief, defendant refers to her defense as a theory of innocence based upon a "claim of right". Presumably, such a defense referred to defendant's allegation that the money taken by her which forms the basis for counts 1 through 8 was actually attorney's fees and costs owed to her by the succession and tutorship. Nevertheless, it would be impossible for this Court to determine from the instant record whether or not trial counsel and defendant agreed upon any particular trial strategy. Furthermore, defendant's allegations that trial counsel failed to present any defense or call any lay or expert witnesses also relates to decisions of strategy, and possibly trial preparation. The investigation of such decisions would require an evidentiary hearing and, therefore, could not possibly be reviewed on appeal. See, State v. Martin, 607 So.2d 775, 788 (La.App. 1st Cir.1992).
For the above reasons, this argument is not subject to appellate review.

ARGUMENT NO. TWO (SUPPLEMENTAL ASSIGNMENT OF ERROR NO. ONE):
In this assignment of error, defendant contends that the trial court erred in proceeding with the criminal prosecution without ruling on her motion to recuse the judges of the 22nd Judicial District Court.
La.C.Cr.P. art. 671 A provides:
In a criminal case a judge of any court, trial or appellate, shall be recused when he:
(1) Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial;
(2) Is the spouse of the accused, of the party injured, of an attorney employed in the cause, or of the district attorney; or is related to the accused or the party injured, or to the spouse of the accused or party injured, within the fourth degree; or is related to an attorney employed in the cause or to the district attorney, or to the spouse of either, within the second degree;
(3) Has been employed or consulted as an attorney in the cause, or has been associated with an attorney during the latter's employment in the cause;
(4) Is a witness in the cause;
(5) Has performed a judicial act in the case in another court; or

*1102 (6) Would be unable, for any other reason, to conduct a fair and impartial trial.
In her brief to this Court, defendant contends that this motion to recuse was filed by her attorney, the late George Ehmig, on March 25, 1988. At that time, the instant bill of information had not yet been filed. The instant prosecution was originally instituted by grand jury indictment (case no. 164653), which was subsequently nolle prossed. Thereafter, the prosecution was reinstituted by the filing of the instant bill of information (case no. 177110) on December 9, 1988.
We note that the instant record (case no. 177110) does not contain a motion to recuse all of the judges of the 22nd Judicial District Court. However, pursuant to a defense motion, which was granted on January 15, 1991, the record in case number 164653 was consolidated with the record in case number 177110. The record in case number 164653 does contain this motion to recuse all of the judges of the 22nd Judicial District Court, which actually was filed by Mr. Ehmig on April 25, 1988. On April 26, 1988, Judge Thomas W. Tanner issued an order recusing himself from the instant case. (See no. 164653, Vol. 1, R 50). The case was reallotted to Judge James R. Strain, Jr.; and, at a hearing on June 3, 1988, he denied defendant's motion to recuse all of the judges of the 22nd Judicial District Court on its face.[2] (See no. 164653, Vol. 1, R 10).
Thereafter, defendant filed another motion to recuse, which was directed at Judge Strain alone. This motion to recuse Judge Strain was filed on January 18, 1989. On April 17, 1989, Judge Strain issued an order recusing himself from the instant case due to his recent election as a Slidell City Court Judge. Thereafter, Judge John W. Greene issued an order recusing himself from the case on April 21, 1989. Judges France W. Watts, III, and Brady M. Fitzsimmons also issued orders recusing themselves from the instant case on May 8, 1989. Apparently, Judges Greene, Watts, and Fitzsimmons recused themselves in turn as the instant case was reallotted to each one of them. See, La.C.Cr.P. art. 672.
Furthermore, while defendant did file a motion to recuse Judge A. Clayton James, the trial judge herein, this motion was filed after the instant trial and related only to Judge James' ability to impartially decide whether or not defendant could represent herself on appeal. In a hearing held on March 6, 1991, Judge Stephen A. Duczer denied this post trial motion to recuse Judge James.
In conclusion we find that, contrary to defendant's argument, her motion to recuse all of the judges of the 22nd Judicial District Court, as well as her other motions to recuse, were considered and ruled upon.
This assignment of error is meritless.

ARGUMENT NO. THREE:
In this argument, defendant contends the trial court erred in proceeding with the criminal prosecution without determining the issue of her mental capacity to stand trial and assist counsel in her defense. However, we note that this argument does not relate to an original or supplemental assignment of error. In accord with the well-established jurisprudence of the Louisiana Supreme Court, this Court will not consider arguments which are neither assigned as error nor related to errors patent on the face of the record. State v. Williams, 319 So.2d 404 (La.1975); State v. Spears, 525 So.2d 329, 330, n. 4 (La.App. 1st Cir.), writ denied, 532 So.2d 175 (1988). Moreover, as will be noted herein, we find this argument to be meritless, since defendant clearly abandoned this issue.
La.C.Cr.P. art. 641 provides:
Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the *1103 capacity to understand the proceedings against him or to assist in his defense.
La.C.Cr.P. art. 642 provides:
The defendant's mental incapacity to proceed may be raised at any time by the defense, the district attorney, or the court. When the question of the defendant's mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution, except the institution of prosecution, until the defendant is found to have the mental capacity to proceed.
Defendant originally filed a motion to determine capacity to proceed on December 15, 1988. In a sanity hearing conducted on January 6, 1989, Judge Strain found defendant had the capacity to proceed to trial and assist counsel in her defense. However, because Judge Strain used a "clear and convincing evidence" standard rather than the correct standard of "preponderance of the evidence", this Court, in an unpublished order dated January 17, 1989, granted defendant's writ application, vacated this ruling, and remanded the matter for a reconsideration under the correct standard. State v. Carr, No. KW 89 0063 (La.App. 1st Cir. Jan. 17, 1989). The following day, however, defendant filed a motion to recuse Judge Strain. Thereafter, Judge Strain and several other judges recused themselves from the case. When the matter was finally reallotted to Judge James, a hearing on several motions was scheduled for October 13, 1989. At the very beginning of this hearing, trial counsel referred to this Court's order remanding the matter for reconsideration and stated that the defense was now withdrawing the motion to determine defendant's capacity. Trial counsel stated: "The basis being that it was filed in good faith at the time that it was filed, but nine, ten months have passed since that time and defendant believes that competence is no longer an issue and I concur." Accordingly, the trial court did not err in proceeding with the criminal prosecution at that point, since defendant withdrew the motion to determine her mental capacity to stand trial and assist counsel in her defense.
This argument is meritless.

ARGUMENT NO. FOUR (SUPPLEMENTAL ASSIGNMENTS OF ERROR NOS. TWO AND FIVE):
In these assignments of error, defendant contends reversible error occurred when the call of the central jury pool took place before a recused judge and the petit jury venire was called out of the presence of defendant and her counsel.
La.C.Cr.P. art. 784 provides:
In selecting a panel, names shall be drawn from the petit jury venire indiscriminately and by lot in open court and in a manner to be determined by the court.
In those judicial district courts, including the Criminal District Court for the parish of Orleans, wherein use of a jury pool has been authorized by law, the petit jury panel shall be selected by random, indiscriminate choice in a manner to be determined by the rules of the court in which the jury panel is selected.
See also, Rules of Court, 22nd Judicial District, Rule 17.
In her brief to this Court, defendant states:
Judge Brady Fitzsimmons recused himself from the trial of this matter, (sic) on May 8, 1989 ... Judge Brady Fitzsimmons presided over the central jury pool in the Twenty-second Judicial District Court, the week of November 27-30, 1989, thereby nullifying the petit jury venire, and the selection of its panel members as a matter of constitutional law ...
Judge Brady Fitzsimmons execused (sic) twenty-five potential jurors, according to the civil jury minutes, Monday, November 27, 1989. No minutes exist for the selection of Jacqueline Carr's petit jury venire panel lists, and the "call" of the petit jury venire occurred out of the presence of the criminal defendant, Jacqueline Carr, and her counsel. Without minutes, no one knows "where" the potential jurors came from, or "who" *1104 selected the list and "if" the selection was done in open court. St. Tammany Parish employs a pattern of selecting potential jurors in a discriminatory manner, not in open court, and without drawing the names indiscriminately from a "hat," by the Sheriff's deputy, in front of the Judge and the criminal defendant, which renders the selection process unconstitutional, denying "due process."
Jacqueline Carr attaches an excerpt of minutes for the complete jury selection process November 27-29, 1989, denoting that no criminal jury petit venire panels were selected.
However, the central jury pool minutes for Wednesday, November 29, 1989, the date of selection of the jury for State of Louisiana v. Jacqueline Carr, [indicate] Hon. Brady Fitzsimmons, recused judge, presided over the central jury pool.
Where did the jurors come from? From the streets of Covington? Obviously, the selection process is null and void.
(Defendant's brief pp. 65-67).
In support of her argument, defendant has attached five pages of minute entries apparently indicating that Judge Fitzsimmons presided over the call of the petit jury venire on November 27, 1989, in a civil jury trial entitled Lotz v. Zetz 7-Up, et al. The instant trial began with jury selection on November 29, 1989, thus the implication being that Judge Fitzsimmons presided over the selection of the same central jury pool and/or petit jury venire used in defendant's case.
Initially, we note that there is nothing in the record upon which to base our review of these allegations. Although defendant has attached to her brief the above referenced minute entries, this Court has no authority to receive or review evidence not contained in the trial court record. State v. Swan, 544 So.2d 1204, 1209 (La. App. 1st Cir.1989). Furthermore, even if we could consider these minute entries, they would not be sufficient to prove that Judge Fitzsimmons presided over the selection of the central jury pool and/or the petit jury venire actually utilized in defendant's case. Moreover, while defendant argues that the procedures used in the selection of the central jury pool and the petit jury venire violated both Article 784 and local court rules, we note that such arguments cannot be raised for the first time on appeal. The proper procedural vehicle for challenging these alleged irregularities was a pretrial motion to quash. See, La.C.Cr.P. art. 532(9); State v. Ramos, 390 So.2d 1262, 1263 (La.1980). Even assuming that such irregularities occurred too late in the petit jury venire selection process to file a pretrial motion to quash, defendant should have made a timely objection prior to the beginning of voir dire examination. La. C.Cr.P. art. 841; State v. Mitchell, 356 So.2d 974, 982 (La.1978), cert. denied, 439 U.S. 926, 99 S.Ct. 310, 58 L.Ed.2d 319 (1978). However, the only objection relating to the petit jury venire was trial counsel's objection to the prosecutor's improper conduct in the presence of the first panel of eighteen prospective jurors, as will be noted in our treatment of argument number six.
These assignments of error are meritless.

ARGUMENTS NOS. FIVE AND SIX (SUPPLEMENTAL ASSIGNMENTS OF ERROR NOS. THREE AND FOUR):
In argument number five (supplemental assignment of error number four), defendant contends that the trial court erred in disqualifying a prospective juror, Gerald Rouleau, in a discriminatory manner. In argument number six (supplemental assignment of error number three), defendant contends that she was prejudiced by prosecutorial misconduct.
La.C.Cr.P. art. 787 provides:
The court may disqualify a prospective petit juror from service in a particular case when for any reason doubt exists as to the competency of the prospective juror to serve in the case.
The court, on its own motion, may excuse a prospective juror by virtue of the fact that it did not reasonably believe that *1105 person qualified as a juror. State v. Williams, 442 So.2d 740, 744 (La.App. 1st Cir.1983). Absent a clear showing of an abuse of discretion, the trial court's ruling on the qualifications of jurors to serve will not be disturbed on appeal. State v. Williams, 442 So.2d at 744.
It is necessary to give to the trial court the authority to dismiss prospective jurors in order to protect the proceedings from potential error. State v. Kohler, 434 So.2d 1110, 1117 (La.App. 1st Cir.1983). Although Article 787 gives to the trial court broad powers in determining the qualifications of prospective jurors, this article should be read in pari materia with La.C.Cr.P. arts. 797 and 798 which set forth grounds upon which a juror may be challenged for cause. State v. Kohler, 434 So.2d at 1117.
In her brief to this Court, defendant asserts that the trial court erred in dismissing Mr. Rouleau without adequate voir dire examination simply because he was acquainted with Joseph E. Carr, the deceased brother of defendant. We disagree. During voir dire examination, the following exchange occurred in the trial court's general questioning of prospective jurors:
Q Do you have any reason, any reason whatsoever that you feel that you are incapable of serving as a juror in this case?
MR. ROULEAU: Indicates affirmatively.
Q Yes, Mr. Rouleau?
MR. ROULEAU: Judge I haveI am a lifelong resident of Slidell and I personally know Jackie Carr.
Q Thank you. The fact that you know her personally do you think that would impair or destroy your ability to be fair to the State and to Jackie Carr or could you hear the evidence and decide the case solely on the evidence that you heard in this case.
MR. ROULEAU: I thought about it in there. It is a tough decision for me to make. I just don't know how it is going to influence because I have known her for a long time.
Q How well do you know her?
MR. ROULEAU: Well, I was mostly, I was probably closer to her brother than I was to her, but she knows my wife real well. Iwent to school together and everything, so
Q Would I be correct in surmising that you would be uncomfortable serving as a trier of fact?
MR. ROULEAU: Yes, very much so.
Q Or as a judge in her case?
MR. ROULEAU: I would be very uncomfortable.
THE COURT: Does anyone have any problem?
DEFENSE COUNSEL: I have no objection, Your Honor.
THE COURT: Thank you. You may go to lunch. I think they are going to be meeting again, about 2:00 in another courtroom. Thank you, sir.
In light of Mr. Rouleau's candid responses, we find no abuse of discretion by the trial court in dismissing this prospective juror.
In argument number six, defendant contends that she was prejudiced by the prosecutor's "tampering with the petit jury venire" resulting in the trial court's discharge of eighteen prospective jurors. Immediately before the beginning of voir dire examination, the following colloquy occurred between defense counsel, the prosecutor, and the trial court:
(AT THIS TIME, A CONFERENCE WAS HELD IN CHAMBERS BETWEEN COURT AND COUNSEL OUTSIDE THE HEARING OF THE COURT REPORTER AND THE PROSPECTIVE JURY. AFTER SAID DISCUSSION, THE FOLLOWING PROCEEDINGS WERE HAD AND ARE AS FOLLOWS:)
(THESE PROCEEDINGS WERE HELD IN CHAMBERS OUT OF THE HEARING OF THE PROSPECTIVE JURORS.)
DEFENSE COUNSEL: Your Honor, [the prosecutor] and I returned into the courtroom after a little conference we had in chambers. The jury of eighteen is inside. The jury venire of eighteen is inside in three rows of six. The front row of six is practically on counsel's table[.] [The prosecutor] went to his table [and] saidobserved smilingly to the jurors *1106 that we are practically sitting in your lap, so youin our laps, and then looked at them and said, "You can believe everything on this side of the table but not," and stopped, turning to my side of the table. I think that sort of, you know, jollying up, relating to the jurors, and saying, "you can"it may have been in fun, and it may have been with a smile, but for the D.A. to ingratiate himself to the prospective jurors with the remark that you can believe everything that is on this side of the table but not over on there, even with a smile, is just entirely inappropriate. I, you know, I am not out here to dismiss jurors but I just think that is wrong and I think the jury venire, those eighteen, should be dismissed. And I just think that is inappropriate behavior.
PROSECUTOR: I said it. And I think it was a fair characterization. I didn't say it to the whole venire, I just said it to the lady that was sitting in my lap. I apologize to the Court, to him, if it is inappropriate, I am sorry.
THE COURT: Well, I am not going to take any chances on this case from the very beginning. Bring us another eighteen over here. Discharge that eighteen; let's get another eighteen over here. We will be quiet this time. We will make no statements to the venire
PROSECUTOR: Yes, Your Honor.
THE COURT: Until I open court.
PROSECUTOR: Yes, Your Honor.
Initially, we note that this Court does not approve of these acts and comments by the prosecutor reflected in the above quoted excerpt. In our view, the prosecutor's conduct was too informal under these circumstances and was unprofessional. However, contrary to defendant's argument, we find no prejudice resulted from the prosecutor's comments to the panel of prospective jurors. After calling the prosecutor's objectionable conduct to the trial court's attention, defense counsel requested that this entire panel of eighteen prospective jurors be dismissed. Out of an abundance of caution, the trial court immediately granted this request, dismissed the entire panel, and called for a new panel of eighteen prospective jurors. The trial court also admonished the prosecutor against such conduct in the future.
The defense requested the dismissal of the entire panel of prospective jurors and the trial court granted this request. Under these circumstances, we find that the trial court's prompt action dispelled any possibility of prejudice to defendant.
For the above reasons, these assignments of error are meritless.

PATENT SENTENCING ERROR
We note a patent sentencing error. The trial court did not give defendant credit for time served when the sentences were imposed. La.C.Cr.P. art. 880 requires the court to give a defendant "credit toward service of his sentence for time spent in actual custody prior to imposition of sentence." Patent sentencing error occurs when the trial court fails to specify credit for time served. State v. Greer, 572 So.2d 1166, 1172 (La.App. 1st Cir.1990). Accordingly, we find a patent sentencing error and amend the sentences to reflect that defendant is to be given credit for time served, if any, prior to the execution of her sentences. See, La.C.Cr.P. art. 882 A. Resentencing is not required. However, we remand the case and order the district court to amend the commitment and the minute entry of the sentencing to reflect that defendant is to be given credit for time served.
CONVICTIONS AFFIRMED, SENTENCE AFFIRMED, AS AMENDED; REMANDED WITH ORDER.
EXHIBIT A

State of Louisiana

Court of Appeal, First Circuit

No. KA 90 1410

Parish of St. Tammany

Dist.Ct. # 177,110

February 10, 1991

State of Louisiana

Versus

Jacqueline Carr
In re MOTION TO SUPPLEMENT THE RECORD-ON-APPEAL; MOTION FOR *1107 REHEARING ON EXTENSION OF TIME TO FILE BRIEFS, AFTER CERTIFIED RECORD FILED
This motion is but one of numerous motions filed by defendant with this Court concerning the record on appeal and the time for filing her brief. Presently, this case is set for hearing on the February, 1992, docket of this Court. It is the chronologically oldest criminal appeal pending before this Court, largely due to the delays caused by the piecemeal approach of defendant in raising various objections and by her numerous requests for extension of time limits. Defendant's request in the present motion for additional time within which to file new assignments of error is one which we feel should be granted. For that reason alone, we will grant her request for an extension of time to file a brief. However, in so doing, we must remove the case from the February, 1992, docket. Additionally, we elect to allow defendant ample time to prepare and present to the appropriate court her final and complete objections to any portion of the record or exhibits. Only in this way can the case ever be in a posture for docketing and decision.
We first address defendant's objection that State Exhibit 22 does not contain a document prepared by the district court clerk stating that it is "certified and authenticated." Defendant argues that such a document is required by the Uniform RulesCourts of Appeal. Presumably, defendant is referring to Rule 2-1.15. That rule provides: "The certified copy of the original record and the duplicate record shall each bear the certificate of the clerk of the trial court as to the completeness and authenticity thereof." The rule applies to the record, not to exhibits. State Exhibit 22 consists of a suit record in a civil matter; the record was introduced into evidence at defendant's criminal trial herein. An exhibit is to be forwarded with the record on appeal to the court of appeal; it is to be forwarded as it existed when introduced into evidence. It would be improper for the clerk of the district court to add to State Exhibit 22 a document which was not included in the exhibit when it was introduced into evidence. Defendant's reliance on Rule 2-1.15 is misplaced, and her objection is totally without merit. (We note that defendant has filed some objection to the authenticity of this same exhibit. That objection has been referred to the merits of her appeal.)
Secondly, we address defendant's request for time within which to file additional assignments of error and to obtain supplementation of the record on appeal. Defendant may not file new assignments of error with this Court. She must do so with the district court and should have petitioned the district court for time within which to do so. See La.C.Cr.P. art. 916. Apparently, defendant already has requested that the district court supplement the appellate record with various transcripts; however, her motion is not completely clear in that regard. In order to allow defendant ample time to file additional assignments of error and obtain a supplementation of the appellate record, we issue the follow directives. The time limits set forth below are intended as maximum limits. Defendant may obtain a new docketing date at any point in the process by filing a motion for docketing and her brief on the merits, as described below, with this Court. However, by doing so, she will be deemed to have waived any objection to the appellate record and exhibits not already preserved and resolved by the procedures set forth herein and to any right to file additional assignments of error not already filed with the district court.
Defendant is allowed until the 2nd day of April, 1992, to file additional assignments of error with the district court and to petition the district court for supplementation of the appellate record. The request for supplementation shall be in the form of a motion and shall include a logical listing of all items defendant wishes to add to the appellate record. If defendant objects to a ruling of the district court regarding supplementation of the record, she is allowed ten days from such ruling to apply to this Court for review. All objections shall be presented in one pleading and in a logical *1108 manner. The district court is allowed until the 2nd day of June, 1992, to complete the supplement to the appellate record. When the supplement to the record is completed, and before it is lodged with this Court, the district court shall send written notice thereof to defendant and the state. Defendant shall be allowed to review it and is allowed until ten days following the mailing of that notice to complain to the district court that the supplement to the record is not in compliance with the district court's order or with an order of this Court upon review of the district court's order. All such objections shall be presented in one pleading and in a logical manner. The district court shall rule on the objection(s) as soon as practicable, and defendant is allowed ten days from that ruling to seek review by this Court. The supplemental record shall be lodged with this Court within three days of the passage of time to object, if no objection is filed; if an objection is filed to the supplemental record, it shall be lodged as soon as practicable after resolution of the objection. Motions for extension the time limits set herein will not be well-received by this Court and must include specific factual allegations to justify an extension. Moreover, any such request for extension of time must be filed with this Court at least five days (excluding weekends and holidays) prior to the expiration of the time limit at issue.
The filings in this case have been voluminous and confusing. In order to assure that all arguments of defendant are recognized, defendant is directed to consolidate all arguments in one final brief. That brief shall include any arguments defendant has included in any previously filed brief and which she wishes to maintain, any arguments defendant urged in support of her objections to State Exhibit 22 (referred to the merits) and which she wishes to maintain, and any new arguments on previously filed and new assignments of error. That one brief shall serve as the complete basis of all arguments by defendant on appeal and shall be filed within twenty-five (25) days of the mailing of notice of lodging of the supplemental appellate record. (At that point, the case will be placed on the next available docket of this Court, with oral argument.) Likewise, the state shall consolidate all previous arguments and include any new arguments in one brief to be filed with this Court within forty-five (45) days of the mailing of notice of lodging of the supplemental appellate record. Defendant may file one supplemental brief, if she so elects; it must be filed within ten (10) days of the filing of the state's brief. Any motions for extension of time to file a brief will not be well-received by this Court and must include specific factual allegations to justify an extension. Moreover, any such request for extension of time must be filed with this Court at least five days (excluding weekends and holidays) prior to the expiration of the time limit at issue.
Additionally, the record and exhibits lodged with this Court may be viewed at the Baton Rouge office of the Clerk of Court only during normal business hours: 8:30 a.m. to 4:30 p.m. All non-Court personnel must be prepared to leave the office promptly at 4:30 p.m.

GLC
COURT OF APPEAL, FIRST CIRCUIT
 /s/ Nancy S. James
 Deputy Clerk of Court
 For The Court
NOTES
[1] Defendant originally filed ten pro se assignments of error. Subsequently, the public defender appointed to represent defendant on appeal filed four assignments of error. However, on March 6, 1991, the trial court ruled defendant could represent herself on appeal and released the public defender from the case.

On February 10, 1992, in an unpublished, three page order, this Court removed the instant case from the February, 1992, docket in order to permit defendant to supplement the appeal record and exhibits. State v. Carr, No. KA 90 1410 (La.App. 1st Cir. Feb. 10, 1992). A copy of that order, erroneously dated February 10, 1991, is included herein as Exhibit A. While that order permitted defendant to supplement the appeal record and exhibits and file any necessary supplemental assignments of error, defendant also was instructed to consolidate all arguments relating to original or supplemental assignments of error in one final brief.
On October 5, 1992, defendant filed seven supplemental assignments of error in the district court and a final appeal brief with this Court. Defendant's final brief contains six arguments relating to only five supplemental assignments of error. Accordingly, those original and supplemental assignments of error not briefed on appeal are considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.
[2] This motion to recuse all of the judges of the 22nd Judicial District Court was based on mere conclusory allegations; it did not set forth allegations of fact which, if proved, would amount to substantial bias or prejudice by any particular judge in the district. Therefore, the motion was correctly denied. Furthermore, under these circumstances. Judge Strain was not required to refer the motion to another judge for hearing. State v. Beavers, 394 So.2d 1218, 1229 (La.1981); State v. Brown, 546 So.2d 1265, 1272 (La.App. 1st Cir.1989).