388 So.2d 751 (1980)
STATE of Louisiana
v.
Terry P. DUPLANTIS.
No. 66840.
Supreme Court of Louisiana.
September 3, 1980.
*752 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, William W. Hall, Asst. Dist. Attys., for plaintiff-appellee.
Charles C. Garretson, New Orleans, for defendant-appellant.
CALOGERO, Justice.
Defendant Terry P. Duplantis was charged by bill of information with possession of a controlled dangerous substance, phencyclidine, in violation of R.S. 40:467. After a jury trial defendant was found guilty as charged and was sentenced to five years at hard labor. The only issue raised on this appeal is whether the trial court erred in denying defendant's motion to suppress.
On March 3, 1979 defendant was arrested in a model apartment of the Bissonet Apartments in Jefferson Parish for criminal trespass. After being taken to the Jefferson Parish Sheriff's Office and being booked on that charge, defendant was required to surrender his wallet and other personal belongings to the booking officer. The booking officer then looked through defendant's wallet and found four aluminum foil packets containing a crystalline substance (later learned to be phencyclidine) in one of the wallet's compartments. Defendant was then arrested on the instant charge.
At the hearing on the motion to suppress defendant contended that the seizure and search of his wallet and the subsequent seizure of the foil packets were unlawful. In brief he argues that even if the confiscation of the personal property and the inventory search of the wallet were authorized, the booking officer exceeded the scope of his authority. He contends that while the officer might have been authorized to inventory money, credit cards, and other things of value, he could not search under the flaps of the wallet or open the foil packets found there and that the alleged inventory search was in fact a subterfuge for a warrantless search for contraband.
The confiscation of an arrestee's property at the time he is booked on a charge is authorized under Louisiana law. In State v. Taylor, 347 So.2d 172, 179 (1977), this Court rejected the argument that a search of a notebook surrendered at the time of the booking was unlawful because done without a warrant. There the Court noted that the surrender of personal effects and inventory search at the time of booking are designed to protect the arrestee's property, the security of his incarceration, and the personal safety of those who come in contact with him. Furthermore, Article 228 of the Code of Criminal Procedure requires that such surrender be made. That article provides that as part of the routine booking procedure a list of any property taken from the defendant shall be entered in a book together with his name, address, the offense charged against him, by whom he was *753 arrested and the date and the time of the booking.[*]
An inventory search of an arrestee's property at the time he is booked is also constitutionally permissible. As recognized by the United States Supreme Court in South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), the inventory search procedures have developed in response to three distinct needs: the protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger. In State v. Jewell, 338 So.2d 633 (1966) this Court also recognized the inventory exception to the requirement for a warrant. However in Jewell the Court emphasized that an essential requirement to a valid inventory search is that the police must not have acted in bad faith and must not have used the inventory procedure as a subterfuge for a warrantless search.
In the instant case, Deputy Doody, the booking officer, testified at the hearing on the motion to suppress that at the time defendant was booked on the criminal trespass charge, he was asked to surrender his personal belongings. Then as a matter of routine procedure, the officer checked defendant's wallet to determine how much money, credit cards and other things of value he had with him when he arrived at the station, and to list them as required by law. The officer also testified that while he went through the wallet he looked for possible stolen credit cards and other contraband. In the process he looked under one of the flaps of the wallet and discovered the four tin foil packets at issue.
Although Deputy Doody stated that at least part of the reason that he searched defendant's wallet was to discover any possible stolen credit cards or contraband, the search was made in accordance with standard police procedure to list all of the property taken from the defendant at the time he is booked. In accordance with such procedure the officer was authorized to search for and to list anything of value taken from defendant at the time he was booked. The fact that the foil packets were discovered under a "flap" in one of the wallet's compartments does not make the inventory search invalid. Because wallets are designed with many compartments expressly for the purpose of holding valuables, the officer was justified in searching each of the wallet's compartments. Such a search did not therefore exceed the officer's authority to search.
Defendant argues that even after the officer found the foil packets, he was not authorized under the inventory search exception to open the packets and discover the contraband. He contends that it was obvious that nothing of value could have been contained in the packets and that an inventory search of them is invalid.
As indicated above, the officer's search of the wallet was justified. In the course of this legally authorized inventory search for valuables, he discovered the foil packets. He thereupon opened the packets to facilitate his making a comprehensive examination and list of all the contents as is required. There was therefore no need for the officer to obtain a warrant before opening the foil packets.
Because the evidence was discovered in the process of a routine inventory search we find that the trial court did not err in denying defendant's motion to suppress.

*754 Decree

Accordingly defendant's conviction and sentence are affirmed.
AFFIRMED.
LEMMON, J., concurs and assigns reasons.
LEMMON, Justice, concurring.
The scope of a booking search incident to a lawful arrest is extremely broad. A person lawfully subjected to a custodial arrest (particularly for a crime such as criminal trespass) has very little, if any, legitimate expectation of privacy as to things on his person, and it is not offensive to the dignity of the defendant's person for the court to decline to limit the police to searching for dangerous weapons or valuable items. United States v. Robinson, 414 U.S. 218, 239, 94 S.Ct. 467, 478, 38 L.Ed.2d 427 (1973) (Powell, J., concurring).
NOTES
[*] La.C.Cr.P. art. 228 provides as follows:

"It is the duty of every peace officer making an arrest, or having an arrested person in his custody, promptly to conduct the person arrested to the nearest jail or police station and cause him to be booked. A person is booked by an entry, in a book kept for that purpose, showing his name and address, the offense charged against him, by whom he was arrested, a list of any property taken from him, and the date and time of booking. Every jail and police station shall keep a book for the listing of the above information as to each prisoner received. The book shall always be open for public inspection. The person booked shall be imprisoned unless he is released on bail."