DOUCET, Judge.
Defendant, Joseph Avery Robinson, was charged by grand jury indictment with aggravated rape in violation of La.R.S. 14:42. He was tried by a twelve-person jury, found guilty of the charged offense, and sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Defendant now appeals his conviction alleging twelve assignments of error.
At approximately 7:45 A.M. on September 30, 1980, Charlene Billeaud and her son, who was four years old at the time, were alone in their mobile home. Mr. Bil-leaud had already left for work. While Mrs. Billeaud was dressing in her bedroom, her son commented that he had seen a man through the window with a mask over his head. She thought her son was joking and continued to dress. When she was fully dressed and came out of the room, the rear door of the trailer opened and a man wearing a stocking over his head backed into the trailer. The man, who had a large knife in his right hand, started walking towards her and forced her into the bedroom. He tied her hands with a pantyhose, stuffed her gown into her mouth, and forced her to engage in sexual intercourse. Before he left he removed the mask he was wearing. Mrs. Billeaud saw his face momentarily. After the defendant left, the victim ran outside and screamed. The victim’s sister-in-law came from her home nearby and untied her.
*331 Later that day, the defendant was arrested by St. Landry Parish authorities and charged with simple burglary of the residence of Jessie Wallace. While in the St. Landry Parish jail, defendant was also arrested by Lafayette Parish authorities and charged with having committed aggravated rape approximately two hours after the burglary occurred. On October 17, 1980, defendant escaped from the St. Landry Parish jail and fled to Houston, Texas. He was apprehended by Texas authorities in December 1980. He committed a felony in Texas and, after serving his term, he was extradited to Louisiana. Defendant was formally charged by grand jury indictment on August 31, 1982 and tried on April 4, 1984.
ASSIGNMENTS OF ERROR 1 AND 2
The defendant filed a motion to quash on the ground that, due to the lack of a speedy trial, two material witnesses could no longer be located for testimony at trial. It is contended first that the motion was not ruled upon by the court. Defendant contends that the court erred in failing to grant the motion to quash.
The first contention that the court failed to rule on the motion is without merit. A hearing was had on the motion and the minutes reflect that, at the completion of the hearing, the court denied the motion.
As to the issue of a speedy trial the record reveals the following sequence of events.
Defendant was formally arrested on October 7, 1980, and escaped from custody on October 17, 1980. In December 1980, he was apprehended by the Texas authorities. He was charged with the unauthorized use of an automobile in Texas on November 4, 1980. He pleaded guilty and was sentenced to four years at hard labor. He was placed on probation and this was revoked in April 1981. He served time in the Texas prison at Huntsville until paroled in August 1982. After some communication between Texas and Louisiana authorities on January 26, 1982, a detainer was placed on the defendant. On August 31, 1982, when he was in custody of the Louisiana authorities, defendant was formally charged by a grand jury indictment. Trial began on April 4, 1984.
The right to a speedy trial was discussed in State v. Dewey, 408 So.2d 1255, 1257 (La.1982) as follows:
“The right to a speedy trial is guaranteed by the sixth amendment to the federal constitution and by article one, section sixteen of our state constitution. The right attaches when an individual becomes an accused whether by formal indictment or bill of information or by arrest and actual restraint. United States v. Manon, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); State v. Perkins, 374 So.2d 1234 (La.1979). Four factors must be considered in determining whether a defendant has been deprived of his right to a speedy trial: (1) length of delay, (2) the reason for the delay, (3) the defendant’s assertion of his right, and (4) prejudice to the defendant Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The initial inquiry is into the length of delay; if the delay is presumptively prejudicial, there will be an inquiry into the other factors. The length of delay that will provoke such an inquiry is dependent upon the peculiar circumstances of the case.”
The length of the delays in the case before us does not appear to be statutorily excessive. The pre-indictment delay spanned for 25 months, from October 7, 1980, the date the defendant was arrested, until August 31, 1982, the date he was formally charged. The permissible delay for the institution of prosecution of a felony necessarily punishable by imprisonment at hard labor, such as aggravated rape in this case, is six years. La.C.Cr.P. art. 572(1). The indictment in this case was filed well within the statutory limitation.
As to the post-indictment delay, there is also no violation of the statute of limitations. La.C.Cr.P. art. 578 provides that no trial shall be commenced in felony cases, other than capital cases, after two *332 years from the date of institution of the prosecution. In the case before us, the defendant was tried on April 4, 1984, one year and eight months after the date of indictment, August 31, 1982.
The time limitation not being breached, however, is not dispositive of the defendant’s claim. State v. Albert, 430 So.2d 1279 (La.App. 1st Cir.1983). The other factors outlined in State v. Dewey, supra, will also be considered.
The second factor addresses the reason for delay. The pre-indictment delay was due to the defendant’s voluntary absence. He escaped shortly after he was arrested in October 1980. In the custody of the Texas authorities, defendant claims that he attempted to notify the Lafayette Parish officers of his location. On May 21, 1981, the Lafayette Parish Sheriff’s Office was notified by the Texas Department of Corrections of the defendant’s incarceration in Texas. In July 1981, an inmate attorney, in Huntsville, asked the Lafayette Parish Sheriff’s Office for the charges pending against the defendant. In January 1982, a detainer was placed on the defendant. The State cannot be charged with the responsibility for any delay caused by the defendant’s own actions in escaping from the custody of the Louisiana authorities and being incarcerated in Texas. State v. James, 394 So.2d 1197 (La.1981).
Once the defendant was formally charged, any further delays were principally attributable to the defendant. Although trial was originally set for April 14, 1983, on April 12, 1983, defendant asked for a continuance. On May 10, 1983, the date for which trial had been set, both parties filed joint motions for a continuance. On January 31, 1984, and then on March 13, 1984, the defendant asked for continuances. On March 13, 1984, the trial judge set the trial date for April 4, 1984, and indicated that no more motions for continuance would be granted. This shows that the reasons for delay at pre-indictment, as well as post-indictment stages, were due to the defendant’s actions.
The third factor to be considered is the defendant’s • assertion of his rights. While still in prison in Texas he filed several motions. On April 13, 1982, he filed a writ of mandamus requesting the court to hear his motions. On April 12, 1983, he filed a motion to quash which was heard and denied on May 10, 1983. On May 2, 1983, he filed a motion for speedy trial and for writ of mandamus. On July 6 and November 18, 1983, defendant filed a motion to dismiss. The defendant did assert his rights.
The fourth factor to be analyzed is prejudice to the defendant. Defendant claims that he was prejudiced because he was unable to locate two witnesses. He testified that these witnesses were visiting him on the day of the alleged rape at a Lafayette motel, the name and location of which he could not recall, and that, at the time of the rape, one of the witnesses had his car. His attorney at the time testified that he attempted to contact the two witnesses but was unable to reach them. Copies of letters and subpoenas to the witnesses were submitted into evidence.
In State v. Malvo, 357 So.2d 1084, 1087 (La.1978), a defendant also claimed he was prejudiced because a material witness died during the trial. In finding the defendant had not suffered any prejudice the court stated:
“[I]t is significant that it was not shown that the ‘material’, witness who was no longer available for trial in fact had testimony which would aid defendant’s case. Instead, all that is known is that the witness might have been able to assist the defendant in tracing his actions on the night of the offense.”
As in State v. Malvo, supra, in the case at hand all that is known is that the witnesses might have had testimony aiding the defendant. The defendant could not have suffered any undue prejudice.
The above analysis of the various factors reveals that the defendant was not prejudiced by a delay of trial. These assignments of error lack merit.
*333 ASSIGNMENTS OF ERROR 3, 4 AND 5
In these assignments of error the defendant contends that he was denied due process of the law when the State failed to disclose, in advance of a preliminary hearing, that a witness who testified at the hearing had previously issued a statement that was exculpatory. Defendant also contends that, by withholding the statement, he was denied the right of proper cross examination at the hearing and should have been afforded the right to introduce the statement into evidence at trial.
On June 29, 1983, the State moved for and was granted a preliminary hearing for the purpose of perpetuating the testimony of Jessie Wallace (whose house had been burglarized) on the assumption that he would be out of the country when the case was fixed for trial. (The witness, however, died before trial.) The defendant claims that prior to this preliminary examination, the State failed to disclose to him a statement by Wallace in which he gave a description of the suspect, which did not match that of the defendant as to height and weight. The defendant was not aware of the existence of this statement until the day before trial at a hearing on a motion to suppress. The defendant claims that the failure of the State to timely disclose the above statement, which he considers to be exculpatory evidence, constitutes reversible error.
The State is required, upon the request of the defendant, to disclose all evidence which may be favorable to the accused, and/or material and relevant to the issue of guilt or punishment. La.C.Cr.P. art. 718; Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The failure of the State to comply with the discovery procedure will not automatically command reversal. Rather, the record must be examined to determine whether any prejudice, which may have resulted from the non-compliance, caused the trier of fact to reach the wrong conclusion. State v. Mitchell, 412 So.2d 1042 (La.1982); State v. Ray, 423 So.2d 1116 (La.1982); State v. Strickland, 398 So.2d 1062 (La.1981). A review of the record reveals that any prejudice would not have caused the jury to reach an incorrect conclusion. Viewing the evidence in the light most favorable to the prosecution the trier of fact would have found beyond a reasonable doubt that the defendant was guilty.
The alleged exculpatory evidence was a statement made to the police in which Jessie Wallace described a suspect who stole a pair of his wife’s pantyhose, which were supposedly used as a mask and used to tie the rape victim. According to the officer to whom the statement was given, Wallace stated that the suspect’s height was 5 feet 9 inches and that his weight was 165 pounds. The defendant asserts that this description was exculpatory as it was incorrect by approximately 3 inches in height, and by 25 pounds by weight.
The record, however, reveals that the discrepancy was not sufficient to have created a prejudice causing the jury to reach an incorrect decision, for the other evidence against the defendant was overwhelming. The victim testified that the rapist was a black man with a light complexion, measuring 5 feet 4 inches and weighing approximately 120 pounds and wearing a checkered shirt, faded blue jeans and tennis shoes. Robinson is a black man, light skinned, measuring 5 feet 4 inches and weighs 130 pounds. The victim identified a checkered shirt belonging to Robinson as being the shirt the rapist had worn. The defendant’s brother-in-law testified that, on the day of the crime, he recalled that the defendant was wearing faded blue jeans. The prints from the defendant’s tennis shoes matched plaster casts of prints found at the window of the victim’s trailer. The victim testified that the rapist tied her arms with part of the pantyhose and used the other part as a mask.
Wallace and his wife testified that at approximately 5:00 A.M. (on the day of the rape) a pair of her pantyhose were taken in a burglary of their home. The description of these matched those of the pantyhose used by the rapist. Blood typing and secretions in the pantyhose were those of a *334 type A secretor. An analysis of the gauze bitten by Mrs. Wallace revealed that she was also a type A secretor. As the burglar drove away, Mr. Wallace noted the license plate number, the make and color of his car, which matched that of Robinson’s car. Roland Guidry testified that he helped pull the defendant’s car out of a ditch along Highway 182 at 7:00 A.M. The rape occurred at 7:45 A.M. at the victim’s residence near Highway 182. As the above discussion reveals, the evidence against the defendant was very convincing. Viewing the evidence in the light most favorable to the prosecution, the jury would have found the defendant guilty beyond a reasonable doubt. The discrepancy in the height and weight description would not have affected the jury’s decision. Any error pertaining to this statement was harmless. This assignment of error lacks merit.
ASSIGNMENT OF ERROR 6
The defendant claims that the evidence was not sufficient to prove beyond a reasonable doubt that the alleged victim was prevented from resisting by threats of great and immediate bodily harm accompanied by apparent power of execution.
La.R.S. 14:42 provides, in part:
“Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon. ” (Emphasis added)
In the case before us, the victim testified:
“And he told me that if I didn’t shut up, all the money in the world wouldn’t do me any good. And he raised the knife towards me.”
Since the defendant was armed with a dangerous weapon, the knife, the victim was prevented from resisting the act. The rational trier of fact, viewing the evidence in the light most favorable to the prosecution, would have found beyond a reasonable doubt that the victim was prevented from resisting the act and that the defendant committed aggravated rape.
This assignment lacks merit.
ASSIGNMENT OF ERROR 7
The defendant claims that the trial court erred in failing to suppress for use as evidence at the trial items of clothing seized from the defendant without a search warrant. While the defendant was in the custody of the St. Landry Parish authorities, the Lafayette Parish authorities went to the jail and seized the defendant’s clothing. The defendant asserts that this clothing should not have been introduced at trial since it was obtained as a result of a search made without a warrant.
The confiscation of an arrestee’s property at the time he is booked on a charge is authorized under Louisiana law. State v. Duplantis, 388 So.2d 751 (La.1980), cert den., 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980). Furthermore, police may conduct a warrantless search of a person legally arrested so as to discover and seize additional evidence of a crime. State v. Elliot, 407 So.2d 659 (La.1981); State v. Clift, 339 So.2d 755 (La.1976). The police in this case had the authority to seize the clothing and shoes of the defendant when he was legally arrested. The clothing was not obtained as a result of an illegal search and was properly admitted into evidence.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR 8
The defendant asserts that the trial court erred in allowing the State to introduce evidence of another crime for which the defendant had not been convicted. The *335 State admitted evidence of a burglary allegedly committed by the defendant. The State introduced testimony of Mr. and Mrs. Wallace who stated that, in the early morning of August 9, 1984, a man broke into their house and stole a pair of pantyhose. Mr. Wallace testified that when he came home from work at approxiamtely 4:30 A.M., he noticed a light burning in his living room and a window open. He saw a man moving inside. He entered the house through a carport door. When Wallace entered he heard the man kick open the front door. Wallace yelled at the burglar and chased him outside to the car. The person got in the car and locked the doors. Wallace went around the car and got the license number. Wallace stated that his wife’s purse had been emptied on a table but nothing was missing except a pair of pantyhose that his wife had left on the divan. The license plate number of the car of the burglary suspect matched that of Robinson’s car. Robinson did not go to trial for the simple burglary charge because the bill of information was quashed as a result of the defendant’s being denied a speedy trial.
State v. Baker, 452 So.2d 737, 744 (La.App. 1st Cir.1984) discussed evidence of other crimes as follows:
“Evidence of other crimes is inadmissible when the only purpose of the evidence is to show the defendant’s propensity to violate criminal law. However, there are exceptions to the general rule of inadmissibility. Aside from related offenses admissible as part of the res gestae and convictions admissible for impeachment purposes, Louisiana statutes provide for three instances when other crimes evidence is ‘substantially relevant’ so as to qualify as an exception to the general rule of exclusion: acts relevant to show intent, knowledge, or system. La.R.S. 15:445, 446. Admission of another crime committed by the same ‘system’ as the offense charged might also be relevant to show the identity of the defendant as the offender. State v. Ka hey, 436 So.2d 475, 487 [(La.1983)]; State v. Talbert, 416 So.2d 97 (La.1982).
******
“The decision of State v. Moore, 440 So.2d 134 (La.1983), State v. Kahey, and State v. Hatcher, [372 So.2d 1024 (La.1979) ], set forth guidelines for determining the admissibility of other crimes evidence. First, there must be clear and convincing evidence that the defendant committed the other crimes. Second, the other crimes evidence must be substantially relevant for some other purpose than to show defendant’s general criminal character. Third, the other crimes .evidence must tend to prove a material fact genuinely at issue. Fourth, the method of commission of both the charged and uncharged crime must be so distinctly similar that one may logically infer that the same person committed both crimes. Fifth, the probative value of other crimes evidence must outweigh its prejudicial effect. State v. Moore, 440 So.2d at 137.”
In the case before us the trial judge found that the other evidence was admitted to show “a system” which would be relevant to show the identity of the defendant as the offender. The guidelines for determining the admissibillity of other crimes evidence were met. First, there is clear and convincing evidence that the defendant committed the burglary of the Wallace residence. Mr. Wallace noted the license plate of the car of the burglar which matched that of Robinson’s car. Robinson had later told an officer that he had lost some money. Thirty-five dollars in bills was found outside the Wallace’s house.
Further, the other crimes evidence is substantially relevant for some other purpose than to show the defendant’s general criminal character and tends to prove a material fact genuinely at issue. The State used this evidence to show that Robinson used the pantyhose taken from the Wallace residence to cover his face and tie the victim in the rape case.
Also, the method of commission of both the charged and uncharged are so distinct *336 ly similar that one may logically infer that the same person committed both crimes. The trial court stated “in both instances there was an unauthorized forcible entry into a house, wherein there was an adult female, whose husband was not present.” He further commented that another connection was the missing pantyhose. It should also be noted that the burglary and the rape took place on the same day and in the same area.
Fifth, the probative value of other crimes evidence did outweigh its prejudicial effect. In addressing this issue the trial judge stated as follows:
“Now, inasmuch as it appears to me that the — if a perpetrator of the offense obtained, in some wise an instrumentality, through the utilization of which he manages to perpetrate or perpetrate the offense, I think that that is probative and that is not barred by being too prejudiced....”
The probative value of determining the means by which the defendant obtained an instrumentality used to commit the rape, would outweigh the possible prejudice of referring to another crime. The trial court did not err in admitting evidence of other crimes.
This assignment of error has no merit.
ASSIGNMENT OF ERROR 9,
10 AND 11
Since these assignments of error were not briefed; they are considered to be abandoned. State v. Lewis, 416 So.2d 921 (La.1982); State v. Fruge, 438 So.2d 1387 (La.App. 3rd Cir.1983).
ASSIGNMENT OF ERROR 12
The defendant contends that the trial court erred in allowing the State to deny the defendant his presumption of innocence by the use of a closing argument indicating the defendant should have called state witnesses to prove his innocence. During closing arguments the defense counsel mentioned that the State had not called as witnesses, Dr. Begnaud, who had examined the victim, and a police officer, to whom the defendant had made a statement concerning some lost money. The defense mentioned that the jury should consider the failure of the State to call the witnesses as circumstances favorable to the defendant.
On rebuttal, the prosecutor commented that the defense counsel could also have subpoenaed and called the same witnesses for their testimony. The trial court overruled the defense’s objections to the statement. The defendant now claims that this statement implied that the failure by the defendant to call the witnesses was intentional because they would have testified adversely to the defendant and as well deprived the defendant of his presumption of innocence by placing the burden on the defendant of proving his innocence.
This issue of the propriety of rebuttal arguments was addressed in State v. Simone, 428 So.2d 1226, 1228 (La.App. 3rd Cir.1983) by this court, which stated:
“[i]n State v. Simms, 381 So.2d 472, 476 (La.1980) where the prosecutor commented on rebuttal that the defendant had failed to call a witness to the stand to support his position, the court held this was permissible under C.Cr.P. art. 774, saying:
‘However, La.Code Crim.P. art. 774 permits argument based on the lack of evidence and allows the state in rebuttal to answer the argument of the defendant. We have frequently held that a reference to lack of evidence or the fact that the evidence is unrebut-ted or uncontradicted is permissible under art. 774. State v. Perkins, 374 So.2d 1234 (La.1979); State v. Smith, 357 So.2d 798 (La.1978). In view of the prosecutor's right to argue the lack of evidence and to respond to defendant’s argument in rebuttal, we are unable to see how defendant was prejudiced by the prosecutor’s reference to the presumption in the instant case.’
•Also, in State v. Thomas, 406 So.2d 1325, 1330 (La. 1981) at footnote 9, the court stated:
*337 ‘There was certainly no error in the prosecutor’s calling to the jury’s attention the failure of the other party to call a witness (as long as the prosecutor did not improperly comment on the failure of the defendant to testify.)’
See also, State v. Strange, 334 So.2d 182 (La.1976).”
The prosecutor’s rebuttal comments concerning the failure of the defendant to call witnesses was not prohibited. The prosecutor was responding to the defendant’s comments concerning the prosecutor’s failure to call two witnesses. The prosecutor made no improper reference to defendant’s failure to testify. The argument did not deprive the defendant of a presumption of innocence.
This assignment of error lacks merit.
For these reasons, the conviction and sentence are affirmed.
AFFIRMED.