NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-271

STATE OF LOUISIANA

VERSUS

DEONTA WARE

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 14-K-2521-A
HONORABLE JAMES PAUL DOHERTY, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

ELIZABETH A. PICKETT
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Marc T. Amy, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.

**AFFIRMED.**

Earl B. Taylor
Twenty-seventh Judicial District Court District Attorney
Jennifer Ardoin
Assistant District Attorney
P. O. Drawer 1968
Opelousas, LA 70571
(337) 948-3041
COUNSEL FOR STATE-APPELLEE:
    State of Louisiana

Chad M. Ikerd
Louisiana Appellate Project
P.O.Box 2125
Lafayette, LA 70502
(225) 806-2930
COUNSEL FOR DEFENDANT-APPELLANT:
    Deonta Ware

**PICKETT, Judge.**

## FACTS

On March, 29, 2010, while driving a truck, the defendant, Deonta Ware, struck the victim, Tryell Jenkins, who was riding a bicycle. The defendant left the scene of the crash. The victim died as a result of the injuries suffered when the truck hit his bicycle.

The defendant was indicted on July 23, 2014, for the second degree murder of Tryell Jenkins. A jury trial commenced on January 20, 2016. However, on January 22, 2016, the trial court granted the defendant's motion for a mistrial. A second jury trial commenced on September 19, 2016. On September 21, 2016, the jury returned a unanimous verdict of manslaughter, a violation of La.R.S. 14:31. The defendant was sentenced on November 3, 2016, to thirty years imprisonment at hard labor, with credit for time served. While the defendant objected to the sentence in open court, he did not file a motion to reconsider the sentence.

The defendant has perfected a timely appeal., wherein he alleges insufficient evidence to convict him of manslaughter, the trial court erred by not granting a mistrial, the sentence was excessive, and the trial court erred when it allowed evidence of other crimes to be admitted at trial. For the following reasons, we find no merit to the defendant's allegations of error.

## ASSIGNMENTS OF ERROR

On appeal, the defendant asserts four assignments of error:

1. The State failed to sufficiently prove that Deonta Ware was guilty of manslaughter.

2. The trial court erred by not granting a mistrial during the State's rebuttal when the State impermissibly shifted the burden of proof to Deonta Ware.

3. The thirty-year sentence in this case is constitutionally excessive.

4.    The trial court erred in allowing the State to introduce impermissible other crimes evidence.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

## ASSIGNMENT OF ERROR NUMBER ONE

The defendant argues that the evidence was insufficient to sustain the verdict. In brief, he contends that "[t]he State's case for manslaughter at trial was to argue that Deonta acted with specific intent to kill Mr. Jenkins. He asserts "[t]here was a lack of physical evidence that pointed to Deonta intentionally killing Mr. Jenkins — as opposed to it being an accident."

The defendant was charged with second degree murder. Louisiana Revised Statutes 14:30.1 defines second degree murder as "the killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm[.]" The defendant, however, was found guilty of the responsive verdict of manslaughter. Manslaughter, in pertinent part, is defined as:

> (1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or

> (2) A homicide committed, without any intent to cause death or great bodily harm.

> (a)    When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person[.]

2

La.R.S. 14:31.

When the defendant does not object to a legislatively established responsive verdict, the defendant's conviction will not be reversed, "whether or not that verdict is supported by the evidence, as long as the evidence is sufficient to support the offense charged." *State ex rel. Elaire v. Blackburn,* 424 So.2d 246, 252 (La.1982), *cert. denied*, 461 U.S. 959, 103 S.Ct. 2432 (1983). Manslaughter is a legislatively established responsive verdict to second degree murder. La.Code Crim.P. art. 814(A)(3). The defendant did not object to the responsive verdict of manslaughter prior to the jury rendering its verdict. Therefore, it is only necessary to consider if the evidence was sufficient to support the offense of second degree murder. *State v. Johnson,* 11-336 (La.App. 3 Cir. 2/14/12), 91 So.3d 365.

At trial, the following evidence and testimony was submitted to the jury for consideration:

Brodie Ortego, a sergeant with the Opelousas Police Department, was on patrol the night of March 29, 2010. He and Officer Catina Guilbeau were called to the scene of an accident. Upon arrival, Sgt. Ortego observed a deceased, black male lying alongside the roadway. The sergeant identified several photographs of the scene. The photographs showed the victim's body, scattered bike parts, pieces of plastic picked up from the roadway that the sergeant speculated were pieces of the vehicle that struck the victim's bike, and a gouge in the roadway the sergeant speculated was the impact site. These photographs were published to the jury. Sgt. Ortego, a certified accident reconstructionist, testified that the victim and the vehicle that struck him were both travelling northbound. The initial impact was to the bike's rear tire. He testified the bike had reflectors on the pedals and the victim had reflectors on the heels of his shoes. There were no eyewitnesses to the crash.

Mark Dupont, a paramedic for Acadian Ambulance and a death investigator for the St. Landry Parish Coroner's Office, testified that when he observed the victim's body on the ground, it was extremely contorted. The victim's body was arched, like in a backbend, and his neck was bent backwards. The victim suffered multi-organ system trauma. The injuries were extensive. Mr. Dupont speculated the victim was hit at high speed by a vehicle.

Mark Kuroski, a forensic scientist with a specialty in trace analysis, testified that an examination of the pieces of plastic and other particles picked up from the roadway at the crash site came from a Dodge or Chrysler pickup. Mr. Kuroski agreed there was never a vehicle identified as the vehicle that struck the victim.

Greg Leblanc, a lieutenant with the Opelousas Police Department, was in charge of investigation. He testified that he interviewed the defendant as a witness about a week after the crash. The defendant told him that he was "passing through the scene and he seen a dually truck, a low-rider dually truck, possibly a Dodge, strike the victim." Lt. Leblanc stated that at one point, he went to Levergne's Towing to view a badly burnt-up Dodge, dually truck found a several days after the crash, but he was unable to connect the truck to the victim's death.

Donald Young was Chief of Detectives for the Opelousas Police Department at the time of the investigation. He testified that in March 2012 he and Detective Zachary went to Jackson, Mississippi, where the defendant was incarcerated at the time to interview him regarding the hit and run in 2010. Detective Zachary had received information that the defendant may have been the driver of the vehicle that struck and killed the victim. The defendant gave the detectives three different statements. First, he told the detectives that he witnessed the hit and run while walking down the street. He said the vehicle was heading south, came across the road, and struck the victim who was riding his bike north along the roadway.

4

When Detective Zachary told him that scenario was impossible, the defendant changed his story to the victim was riding a bike and a Dodge truck going northbound hit the victim. Again, there was a logistics problem with the defendant's story because the way he described it, the truck would have ended up on the other side of the ditch immediately off the roadway. The third story the defendant told the detectives was that he was riding as passenger in a four-door, Chevy Capris. He said the driver was a man named Green. The lieutenant stated:

> [H]e [Defendant] remembered the car [was] either dark green or blue, had some 24's or 26's on it and he said that he was sitting down. He said the car was headed northbound on Bullard Street and he was sitting down behind the driver and the driver of the car said, "look at that nigger, Tyrell. Somebody need to take this dude out," so he would veer out to the right. The driver veered out to the right, hit Tyrell knocking him over into the ditch and the car veered into the ditch and he came - - the car came out the other side of the ditch, which is a lie, so that's why I intervened."

Later, when the lieutenant suggested that it may have just been an accident, the defendant became angry and told the officers:

> "[N]ah, this is a murder wrap." He say, "I'm not taking that murder." He say, "Well, why you claiming it to be a murder?" He said, "it was an accident." He said, "Nah, I'm not taking that lick. Y'all wanting me to take that lick." So once again he refused to talk to us.

Brittany Berry, the defendant's aunt, testified that in 2014 the defendant called her from where he was incarcerated. She said he was crying and upset because he did not make parole. She stated that during the conversation she asked him if he was the one who killed Tyrell Jenkins. She said she asked because she was tired of people asking her if he was the one who did it. She testified that he told her he did hit the victim while driving a truck. She testified he said: "Yeah, I killed the lit' nigga (sic)." The defendant said "I killed once and I'll kill again." He told her he did it because the victim had spit in the defendant's grandmother's face. The defendant told Ms. Berry he had been driving a white, dually truck. Ms.

5

Berry stated that following this conversation she was very upset. She said she met Hazel Mayon in the grocery store one day, and Ms. Mayon asked her if the defendant killed the victim. Ms. Berry said she told Ms. Mayon what the defendant said when Ms. Mayon came to her house a few days later. Ms. Mayon was once the defendant's girlfriend.

Ms. Mayon suggested they set up a three-way phone conversation with the defendant. Ms. Mayon spoke with the defendant first, then Ms. Berry was added to the conversation. The defendant was angry with his aunt because she told Ms. Mayon that he had admitted to killing the victim. At some point, Ms. Berry thought that Ms. Mayon disconnected from the conversation. She said that while the defendant did not repeat the admission to her at the time, he did not retract his statements either. Finally, Ms. Berry testified that right after the crash, she had asked the defendant if he knew the victim. The defendant told her that he did and that he had seen a dually truck hit the victim and that "white boys" were driving the truck. Ms. Berry then called the police and told them her nephew had information regarding the accident.

Ms. Mayon testified regarding her conversations with Ms. Berry and with the defendant via text messaging and phone. She testified that she had been the defendant's girlfriend when she was thirteen or fourteen years old. At the time of trial, she was married. After she discussed the defendant with Ms. Berry, she exchanged text messages with the defendant wherein she told him that Ms. Berry told her he killed Tyrell Jenkins. Shortly after the text conversation with the defendant, she initiated a three-way phone conversation with the defendant and Ms. Berry. She stated that when the three-way conversation began, the defendant said "'Brittany, why you told Hazel 'bout everything I told you about killing Tyrell?'" Ms. Mayon stated her phone died after this and she did not hear the

6

remaining conversation between Ms. Berry and the defendant. She indicated, however, that she interpreted the above statement as an admission that he killed the victim.

Travis Turner was temporarily incarcerated with the defendant in March 2014 at Hunt Correctional Center. He testified that the defendant told him he had struck and killed a man with a truck because the man had spit in the defendant's grandmother's face and slapped his mother. He stated the defendant mentioned that the truck was a dually. Mr. Turner identified a note he kept for himself, dated March 12, 2014, which summarized what the defendant had told him about the killing, and a statement dated May 2014 that he wrote for the police, which mentioned that the defendant said he burned the truck after the crash. Sergeant Crystal Leblanc, with the Opelousas Police Department, interviewed Mr. Turner at the correctional facility. She showed him a photographic lineup. Mr. Turner identified the defendant immediately.

Another inmate, Jonathan Johnson, testified that he met the defendant at Angola State Penitentiary. In June 2014, Mr. Johnson wrote a letter to the District Attorney's Office which stated the defendant had told him that he had run a man down in a stolen vehicle and killed him. Mr. Johnson said that the defendant said the incident happened in March 2010. The defendant told Mr. Johnson he did it because the victim had struck his grandmother.

Finally, Anitra Ware, the defendant's mother testified that no one ever slapped her in the face. Furthermore, no one ever spit in the defendant's grandmother's face. Ms. Ware's mother was deceased at the time of trial.

In brief, the defendant seemingly argues that the state failed to prove all the elements of the offense of manslaughter. He points out that "[t]he State's case for

manslaughter at trial was to argue that Deonta acted with specific intent to kill Mr. Jenkins. . . .The evidence, however, did not prove specific intent."

The defendant was charged with second degree murder, which required the state to prove that he had the specific intent to kill or inflict great bodily harm. We find there was sufficient evidence to establish specific intent for the purpose of a second degree murder conviction. "Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1). Specific intent to kill or inflict great bodily harm may be inferred from "the extent and severity of the victim's injuries." *State v. Dickerson*, 14-170, p. 9 (La.App. 3 Cir. 6/4/14), 140 So.3d 904, 909, *writ* denied, 14-1466 (La. 3/13/15), 161 So.3d 638, citing *State v. Patterson*, 10-415 (La.App. 5 Cir. 1/11/11), 63 So.3d 140, *writ denied*, 11-338 (La. 6/17/11), 63 So.3d 1037. As noted above, there was testimony that the victim's body was extremely contorted; his neck bent backwards, his back bent as if he was performing a backbend, and he had extensive internal organ damage. Mr. Dupont, the death investigator for the St. Landry Parish Coroner's Office, testified it appeared that the victim was hit from behind by a speeding car. If the jury believed there was sufficient evidence that the defendant was the driver of the truck that struck the victim, the jury could easily have found, beyond a reasonable doubt, that the defendant had the specific intent to, at the very least, inflict serious bodily harm on the victim.

The paramount issue at trial was who was driving the vehicle that struck and killed the victim. There were four witnesses who testified that the defendant admitted that he struck and killed the victim with a vehicle. In brief, the defendant discusses only Ms. Berry's and Ms. Mayon's testimonies. He points out that Ms. Berry actually did not believe him because he was so upset about not receiving

8

parole. He further argues he never stated to Ms. Mayon that he was responsible for the victim's death. He argues that he had "merely confirmed that he had said he was the one who killed Mr. Jenkins to his aunt previously, not that he in fact did kill Mr. Jenkins or that it was intentional."

However, as noted by the state's response brief, the defendant did not discuss the two fellow inmates' testimonies. Having no knowledge of the facts of the case other than what the defendant told him, Mr. Turner testified the defendant said he killed a man with a truck because the man had spit in the defendant's grandmother's face and slapped his mother. Mr. Turner stated that the defendant said the truck was a dually and that he disposed of the truck by setting it afire. Mr. Johnson testified that the defendant told him that in March 2010, he ran a man down with a stolen vehicle and killed him because the man had struck his grandmother. Ms. Berry, Mr. Turner, and Mr. Johnson all conveyed the same salient facts independently from each other.

Furthermore, in all the statements made by the defendant, initially to Ms. Berry a few days after the hit and run, to Lt. Leblanc a week after the crash, and to Detectives Young and Zachary in 2014, he admitted to seeing the victim struck by a vehicle but reportedly made no attempt to render aid to the victim or report it to the police. The defendant's actions, including the conflicting, voluntary statements, exhibited a "guilty mind." "A finding of purposeful misrepresentation reasonably raises the inference of a 'guilty mind,' just as in the case of 'flight' following an offense or the case of a material misrepresentation of facts by a defendant following an offense." *See State v. Wiley,* 03-884, p. 12 (La.App. 5 Cir. 4/27/04), 880 So.2d 854, 870, *writ denied*, 04-1298 (La. 10/29/04), 885 So.2d 585. The jury obviously believed the state's witnesses' testimonies that the defendant admitted he hit the victim with a vehicle, and together with the severity of the

injuries which killed the victim, the jury had sufficient evidence to find the defendant guilty of second degree murder had they chosen to do so.

There is no merit to this assignment of error.

## ASSIGNMENT OF ERROR NUMBER TWO

The defendant argues that during the state's rebuttal statement, it impermissibly shifted the burden of proof onto the defendant. The defendant objected to the statement and moved for a mistrial. The trial court denied the motion. Accordingly, the defendant argues the trial court erred. The defendant asserts that since he called several witnesses to the stand, the "jury could have reasonably believed that since the defense put on witnesses it was supposed to prove Deonta's innocence[.]" During its rebuttal statement, referring to the defendant's closing argument, the state opened with the following:

> The entire closing argument was, what's the evidence that corroborates. What's corroboration? It's stuff that proves other stuff is true or not true. He didn't say, what do you have to prove that what the people said is true? Fact question, what did he have to prove – what did you hear in this case that proved what they said was not true?

The defendant objected. After the jury was cleared from the courtroom, the defendant argued that the state implied that the burden of proof was on the defendant. "My objection, Your Honor, is that he went further into implying that nothing, nothing was proven to show that it didn't corroborate, in other words, implying that the defendant had a duty or the burden of proving anything in the case[.]" The trial court took the court reporter's recording into chambers and listened to the tape. The trial court denied the defendant's motion for a mistrial, ruling as follows:

> All right, I went back and looked at it and there were a number of references. The first, it started off, it says, "what do you have to prove," and the Court, and the context of that that was said by Mr. Donald Richard, takes that is, just to have a rhetorical question, "what do you have to prove," just generally. Then he started again and he

10

said, "What did he prove," and he stopped, and then he went on and said, you know, he went to say that what was shown that was not proven in this case. The Court went back and the Court has also found the case of *State versus Robinson*, 480 So.2d 329, which is a Third Circuit case, which interprets Code of Criminal Procedure Article 774, and it permits arguments based on the lack of evidence and allows the State rebuttal to answer the argument of the defendant and under that case, the Court did allow the fact of the prosecutor to mention in rebuttal the fact that the defendant had not called any witnesses and the Court seemed to say that as long as the argument did not appoint [sic] to the defendant not testifying, the defendant's right not to testify was still reserved and therefore that was not error. Based upon what I've heard and the generality of it and also based upon the Third Circuit case of *State versus Robinson*, the court is going to deny the motion for mistrial.

In the case referred to by the trial court, *State v. Robinson*, 480 So.2d 329 (La.App. 3 Cir. 1985), *writ denied,* 498 So.2d 13 (La.1986), the defendant argued during closing arguments that the State failed to call the physician who examined the victim and a police officer to whom the victim had given his statement. The defendant was pointing to the lack of evidence. On rebuttal, the state noted to the jury that the defendant could have called the witnesses. On appeal, the defendant argued that the state implied that his failure to call the witnesses was intentional because the witnesses' testimony would have been adverse to his defense, thereby putting the burden of proof on the defendant. This court stated:

> This issue of the propriety of rebuttal arguments was addressed in *State v. Simone*, 428 So.2d 1226, 1228 (La.App. 3rd Cir.1983) by this court, which stated:

>> "[i]n *State v. Simms,* 381 So.2d 472, 476 (La.1980) where the prosecutor commented on rebuttal that the defendant had failed to call a witness to the stand to support his position, the court held this was permissible under C.Cr.P. art. 774, saying:

>>> 'However, La.Code Crim.P. art. 774 permits argument based on the lack of evidence and allows the state in rebuttal to answer the argument of the defendant. We have frequently held that a reference to lack of evidence or the fact that the evidence is unrebutted or uncontradicted is permissible

11

under art. 774. *State v. Perkins*, 374 So.2d 1234 (La.1979); *State v. Smith,* 357 So.2d 798 (La.1978). In view of the prosecutor's right to argue the lack of evidence and to respond to defendant's argument in rebuttal, we are unable to see how defendant was prejudiced by the prosecutor's reference to the presumption in the instant case.'

Also, in *State v. Thomas,* 406 So.2d 1325, 1330 (La.1981) at footnote 9, the court stated:

'There was certainly no error in the prosecutor's calling to the jury's attention the failure of the other party to call a witness (as long as the prosecutor did not improperly comment on the failure of the defendant to testify.)'

*See also, State v. Strange*, 334 So.2d 182 (La.1976)."

The prosecutor's rebuttal comments concerning the failure of the defendant to call witnesses was not prohibited. The prosecutor was responding to the defendant's comments concerning the prosecutor's failure to call two witnesses. The prosecutor made no improper reference to the defendant's failure to testify. The argument did not deprive the defendant of a presumption of innocence.

*Id.* at 336-37 (alteration in original).

In *State v. Jones*, 15-123, pp. 44-45 (La.App. 4 Cir. 12/2/15), 182 So.3d 251, 279-80, *writ denied*, 16-27 (La. 12/5/16), 210 So.3d 810 (footnote omitted), while noting that "the state's rebuttal shall be confined to answering the argument of the defendant," the fourth circuit held:

However, prosecutors have wide latitude in their closing argument. *State v. Haynes*, 13-0323, p. 12 (La.App. 4 Cir. 5/7/14), 144 So.3d 1083, 1090. A trial court has broad discretion in controlling the scope of closing arguments. *State v. Webb*, 13-0146, p. 26-27 (La.App. 4 Cir. 1/30/14), 133 So.3d 258, 275-276, *writ denied*, 14-0436 (La.10/3/14), 149 So.3d 793, *cert. denied sub nom., Webb v. Louisiana*, --- U.S. ----, 135 S.Ct. 1719, 191 L.Ed.2d 689 (2015). Even where a prosecutor exceeds the bounds of proper argument, a reviewing court will not reverse a conviction unless thoroughly convinced that the argument influenced the jury and contributed to the verdict. *State v. Caliste*, 12-0533, p. 17 (La.App. 4 Cir. 9/4/13), 125 So.3d 8, 18. Further, common sense and logic suggests that in this respect the reviewing court must be thoroughly convinced that the

improper argument influenced the jury and contributed to it rendering a verdict based, at least in part, on prejudice or some reason other than the weight of the evidence presented. Credit should be accorded to the good sense and fair-mindedness of the jurors who have heard the evidence. *State v. Bailey*, 12-1662, p. 8 (La.App. 4 Cir. 10/23/13), 126 So.3d 702, 707.

In the current case, the defendant's closing argument consisted of pointing out the lack of evidence corroborating the testimonies of the four witnesses who claimed the defendant admitted to them that he was the driver of the vehicle that hit and killed the victim. As noted above, La.Code Crim.P. art. 774 allows rebuttal argument based on the lack of evidence. In this case, the state, while somewhat inarticulately, rebutted the defendant's argument. The trial court gave specific instructions to the jury regarding the state's burden of proof and the defendant's presumed innocence. As noted above, the jury should be credited for its "good sense and fair-mindedness."

There is no merit to this assignment of error.

## ASSIGNMENT OF ERROR NUMBER THREE

The defendant argues that the sentence of thirty years imprisonment at hard labor is constitutionally excessive. The defendant does not, however, state in what manner the sentence is excessive. The defendant acknowledges in brief that while he objected to the sentence following the sentencing hearing, he waived review of the sentence because he did not state grounds and that there was no written motion filed requesting reconsideration for the sentence. The defendant's sole argument is that he "requests a constitutional review of his 30-year, aggravated sentence as excessive."

This court has reviewed claims of excessiveness where no objection was made and no motion to reconsider sentence filed. *See State v. Johnlouis*, 09-235 (La.App. 3 Cir. 11/4/09), 22 So.3d 1150, *writ denied*, 10-97 (La. 6/25/10), 38

13

So.3d 336, *cert. denied*, 562 U.S. 1150, 131 S.Ct. 932 (2011); *State v. Thomas*, 08-1358 (La.App. 3 Cir. 5/6/09), 18 So.3d 127; *State v. Perry*, 08-1304 (La.App. 3 Cir. 5/6/09), 9 So.3d 342, *writ denied*, 09-1955 (La. 6/25/10), 38 So.3d 352; *State v. H.J.L.*, 08-823 (La.App. 3 Cir. 12/10/08), 999 So.2d 338, *writ denied*, 09-606 (La. 12/18/09), 23 So.3d 936; *State v. Quinn*, 09-1382 (La.App. 3 Cir. 5/12/10), 38 So.3d 1102, *writ denied*, 10-1355 (La. 1/7/11), 52 So.3d 885.

Therefore, the sentence will be reviewed under a bare excessiveness claim. *See State v. Clark*, 06-508 (La.App. 3 Cir. 9/27/06), 940 So.2d 799, *writ denied*, 06-2857 (La. 9/21/07), 964 So.2d 324.

Louisiana Revised Statutes 14:31(B) provides for a range of imprisonment of not more than forty years for the offense of manslaughter. The defendant was sentenced to thirty years at hard labor.

In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331 (alteration in original), a panel of this court discussed the review of excessive sentence claims, stating:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied,* 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

14

Further, in *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court discussed the considerations an appellate court should take into account when reviewing excessive sentence claims, stating:

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00); 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir. 1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, 958.

In the current case, at the sentencing hearing, the trial court noted that it considered the aggravating and mitigation factors set out by La.Code Crim.P. art. 984.1 and reviewed the defendant's presentence investigation report. The trial court noted that the defendant, who was twenty-four years old at the time of sentencing, had an extensive criminal history starting in 2009. The presentence report listed several arrests and convictions which included simple burglaries, unauthorized use of movables, aggravated assault with a firearm, resisting an officer, illegal possession of stolen goods, and second degree battery. The trial court also noted that while incarcerated awaiting the current trial, the defendant was charged with misdemeanor battery on a correctional officer, resisting an officer, and attempted felony escape. Furthermore, as noted by the second circuit in *State v. White*, 48,788, p. 2 (La.App. 2 Cir. 2/26/14), 136 So.3d 280, 283, *writ denied*, 14-603 (La. 10/24/14), 151 So.3d 599:

15

The proper perspective from which to approach sentence review accords paramount importance to the nature of the conduct proved at trial. With Louisiana's responsive verdict scheme, the jury is provided the discretion to return verdicts for lesser included offenses against the weight of the evidence present at trial. The trial court in sentencing and the reviewing court may assess whether the crime for which defendant has been convicted adequately describes his conduct when the conviction is for a lesser included responsive offense of the crime charged. *State v. Lewis,* 09-1404 (La.10/22/10), 48 So.3d 1073, 1077-1078.

The defendant was charged with second degree murder and as discussed above, the evidence was sufficient to sustain a verdict of second degree murder. Second degree murder is punished with life imprisonment, without the possibility of parole. The jury chose to convict the defendant of the responsive verdict of manslaughter, which has a maximum sentence of forty years. The defendant received only thirty years imprisonment at hard labor.

When considering the following similarly-situated defendants who were charged with second degree murder but convicted of manslaughter, the defendant's sentence is not unconstitutionally excessive. In *State v. Weatherspoon*, 06-539 (La.App. 5 Cir. 12/12/06), 948 So.2d 215, *writ denied*, 07-462 (La. 10/12/07), 965 So.2d 398, the sixteen-year-old defendant with a prior history of violence received a thirty-five-year sentence in the shooting death of a fourteen-year-old boy. In *State v. Williams,* 34,359 (La.App. 2 Cir. 5/9/01), 786 So.2d 203, *writ denied,* 01-2275 (La. 5/10/02), 815 So.2d 835, the second circuit upheld a sixteen-year-old's thirty-year sentence who was charged as a principal to second degree murder during an armed robbery and who had a significant juvenile history. In *State v. Bowman,* 95-667 (La.App. 4 Cir. 7/10/96), 677 So.2d 1094, *writ denied*, 96-2070 (La. 1/31/97), 687 So.2d 400, the sixteen-year-old the defendant, who drove the car but did not pull the trigger, received a thirty-three-year sentence for an unprovoked drive-by shooting.

Considering the above facts and jurisprudence, the trial court did not abuse its vast discretion when it sentenced the defendant to thirty years imprisonment at hard labor.

## ASSIGNMENT OF ERROR NUMBER FOUR

The defendant asserts the trial court permitted testimony that the vehicle the defendant was driving when he struck the victim was a stolen vehicle. The defendant argues that "allowing the State to refer to the vehicle as 'stolen' was prejudicial and outweighed any probative value" the information may have had pursuant to La.Code Evid. arts. 403 and 404(B).

Louisiana Code of Evidence Article 404(B), in pertinent part, provides:

> **Other crimes, wrongs, or acts:** (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

Louisiana Code of Evidence Article 403 provides "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time."

The objection came after the state asked Ms. Berry what the defendant told her about the vehicle that struck and killed the victim. According to the state, there had been a bench conference the previous day regarding whether the State could discuss whether the truck was stolen or not and the trial court had ruled the information constituted an integral part of the act. After the jury was removed, the trial court asked Ms. Berry if the defendant told her the truck was stolen. She said

17

that he did not. However, after brief arguments by defense counsel and the State, the trial court stated:

> I have not heard any testimony accuse [sic] this particular defendant of having stolen the truck. I just heard evidence or argument that it may have involved a stolen truck, not saying who stole it; therefore, at this point and time I think that any testimony concerning the truck and how it came into possession of the defendant is part and parcel of these proceedings, the act and the transaction, and I'm going to allow such evidence.

In brief, the defendant then argues that "[t]hus, by its own reasoning, the trial court was not certain whether Deonta had stolen the truck, which would obviously be a crime, yet it allowed the truck to be deemed 'stolen' when referenced to the jury." Ms. Berry never testified that the vehicle which struck the victim was a stolen vehicle. Later, during Ms. Mayon's testimony, she stated Ms. Berry told her the defendant had said the truck was stolen. The defendant did not object at this time.

The jury had already heard testimony that the defendant had been incarcerated without objection by the defendant. Ms. Berry testified that the defendant was upset when he called her because he did not make parole, and Detective Young testified that he went to where the defendant was incarcerated in Jackson, Mississippi, to question him regarding the death of the victim. The defendant did not object to either of these statements that were direct evidence the defendant had committed a crime at some point. There was never direct testimony that the defendant stole the vehicle that killed the victim. There was no evidence that the comment was so prejudicial that it most surely attributed to the jury's decision to convict the defendant of manslaughter.

There is no merit to this assignment of error.

## CONCLUSION

The defendant's conviction and sentence are affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules−Courts of Appeal, Rule 2−16.3.